Well, the first case for arguments this morning is 14-1037, SmartMetrics v. MasterCard, and I'm wondering if Mr. Bright and Mr. Melnick are here? We'll give them a minute, if not, we'll go on to our second case. All right, let's go to our next case for argument, which is 14-1114, Peripheral Vascular v. W.L. Gore. I appreciate that you're here. Okay, Mr. Kordich, whenever you're ready. Thank you, Your Honor. May it please the Court, we're here because BPV used this Court's jurisdiction to obtain a huge money judgment on a patent it does not have standing to assert. And the reaction in the briefing from BPV has been not to grapple with the merits of the standing challenge primarily, but instead to talk about procedural issues in a way that basically tells this Court, whatever you do, don't look at the merits of the standing challenge. And so I would like to start with a few points on procedure and then move on to the merits. First is, when I was reading through the briefing, through the cases to prepare for the argument, I saw a phrase coming up in this Court's jurisprudence and the Supreme Court's jurisprudence again and again. And so I thought I'd share it, although I'm sure you're familiar with it. Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. Well, yeah. I don't know why you think that helps you. I think that hurts you, because to me that proves the point that the first panel that heard this case grappled with the issue and decided it. So how are we, as another panel not sitting en banc, supposed to kind of overrule that determination by a previous panel? Well, actually, when there is silence on an issue in a court order and it hasn't been raised by the parties in the first appeal, then the Supreme Court has said... Well, if you thought there was a lack of jurisdiction, why didn't you raise it in the first appeal? We had raised it in the district court before, and there was a decision made not to raise it. But on the second appeal, when I got involved, I'm new counsel on the case, looked at the procedural issues, knowing the case law myself, and recognized it was a compelling issue. When the question is why didn't you raise it, and the answer is because a decision was made, that doesn't really respond to why you didn't raise it. I mean, I don't know personally why it wasn't raised in the first instance. I know why it was raised here is because when I became a part of the case, I looked at the... Well, is it your position that the first panel sitting ignored the issue, never ever thought about it, and that's why we're not kind of bound by their conclusions that they do have jurisdiction? That's right. We don't know what they thought because it wasn't raised directly to them, and there's nothing in the order that addresses it, and the Supreme Court has said... Well, there is something in the order that addresses it. They say we have jurisdiction, and it certainly was a part of the record below and a part of the district court's determination, which one presumes, I presume, that a panel sitting reviews those determinations. Do you not? Well, it did not have the underlying materials in that appeal, correct, on the standing issue. The district court spoke to it. And the district court, we think, was erroneous, and there was not the underlying issues. What do you mean they didn't have... It wasn't an order by the district court part of the record and attached to the briefs and part of the appendix? I believe the JMAL order at least was. Which dealt in detail with the district court, one, the fact that it had been raised that it had been an issue below and that the district court opined over it, right? So don't you accept and assume that the prior panel was aware of the issue having been raised? I don't know, but the Supreme Court has said, a court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio. That's the L.A. Tucker truck lines case. And then the Arizona Christian case, in which this exact kind of issue, because there is this obligation, as we talked about, for the court to review sua sponte if it sees a problem. But that's not a problem. I mean, if it's an issue in the district court's opinion, and we read the district court's opinion, we're certainly going to look at it and determine whether or not we have jurisdiction. If we had a question, even if it wasn't briefed, we would have probably ordered supplemental briefing on jurisdiction. I think the fact that we didn't suggests that we thought we did have jurisdiction. I can only say that we don't know. Would you like to speak to the merits of your jurisdictional argument? Sure, absolutely. The merits of the jurisdictional argument go to, number one, the 1980s. Because it confuses me. I think you are confusing Article III standing with standing to bring a cause of action, because it seems to me that Mr. Goldfarb and whatever the other party that you say doesn't have the right to the patent, they have alleged some kind of injury, which is enough for Article III standing, isn't it? In the patent context, the two ways you can have standing are as a patent owner, as an exclusive licensee. No, this is what I think you're confusing. Maybe I'm confused, but I don't think so. You're saying in order to address jurisdiction as a matter of course and determine we don't have Article III case or controversy jurisdiction, these people have to have no injury whatsoever, but they clearly have an injury. Your argument is that they don't hold all of the patent rights, but that's not a constitutional standing problem. That's another standing problem that we could cure right here by joining them. The constitutional standing problem is on day one. This is according to this court's own precedent. On day one, the plaintiff either needs to be an owner of the patent or have an exclusive license. I don't think that's right. I think for Article III standing, he just has to show an injury in fact. To bring the patent suit and to have the rights to bring the infringement action, he has to show ownership, but that's not the constitutional inquiry. That's a prudential standing inquiry, isn't it? No, the prudential standing. Do you have a case that says in order constitutionally, not prudentially to bring the patent suits, they have to own all the rights? They either have to own all the rights or have the exclusive license. So there's two categories. To have Article III standing. To have Article III standing. That's just the way this court has developed this argument about what would be the injury. That doesn't sound right to me. Can you cite me that case? It would be in Balfour would be one case. That would be a primary case in which they talk about the different rights. This is where we get into the all substantial rights analysis. I understand that, but that doesn't sound to me like a constitutional inquiry. That sounds to me like whether they have all the rights necessary to bring the patent suit, and if they don't, then they have to join the people that own the patent. But that's not the Article III injury question. The Article III injury at the beginning of the case. You're not denying that Mr. Goldfarb can at least allege some kind of injury in fact, are you? He cannot have standing under our view when he granted all substantial rights. Does he have some kind of injury in fact here? Is there some kind of damages or the like that he might get from this lawsuit? He could not receive damages based on, for example, the Braxis case is another case to look at. We just have this fundamental, for my understanding of the law, is in order to have standing you need to have a set of rights. In our view, he does not have that. Sorry, Your Honor. To determine, because it seems to me that you haven't alleged that he has no injury in fact here, that he just doesn't have enough of the patent rights to bring a standing question. You'd have a stronger argument if he had no injury in fact, but that's not what you're arguing. You're right. The premise of our argument is that Dr. Goldfarb did not have standing because he transferred all substantial rights in the patent to Bard in 1980. And at that point when he gave up all those rights, the substantial rights, he lost standing. And that's Alfred E. Mann is the case that holds for that proposition. So that would be why Goldfarb doesn't have it. Our position as to why BPV does not have it is because once you construe that agreement as a grant of all substantial rights, then it becomes a virtual assignment. And a virtual assignment must be transferred in writing under Section 261 in the Enzo case that we cite because it is effectively an assignment at that point and it must be transferred. Is your position that if Goldfarb didn't have standing because he had parted with all of his rights, that his presence in the caption voided the entire action? His presence in the caption, if BPV itself had standing independently, it would not have voided the caption. But Goldfarb was not a proper plaintiff to the case because he transferred all substantial rights under the 1980 license. And then BPV had never received the virtual assignment from Bard because there was not a writing of an assignment from Bard to BPV. And so that would be the reason. So both parties were not plaintiffs to the lawsuit. And when you have two parties, the initial plaintiffs to a lawsuit under Abraxas and many other cases, then because you lack constitutional jurisdiction on day one, then the case must be dismissed. And you need to win on both of those points. That's right. And everything hinges on the 1980 license agreement. If the 1980 license agreement is a grant of all substantial rights, then that means Goldfarb lacked standing when he transferred it in 1980. So that's step one. Do you want to talk about the other issue in the remaining time? The willfulness issue? Yes. Yeah. Because you're running short of time. Sure. Yes. The willfulness issue, of course, if you decide that there is standing in this case. We have the willfulness. Willfulness went to the district court on remand to apply as a judge the objective reasonable standard. And we are appealing that decision as well. And I think one thing that may be on the minds of the court is whether the Octane Fitness case somehow affects the Bard and Seagate rulings. Do you have a view on that? I do have a view on that. Yes. Reading Octane Fitness, you can see Octane Fitness dealt with the fee-shifting provisions of 285. And Octane Fitness, the Supreme Court said, because the policy reasons behind the protections of a recklessness standard do not comport with the simple fee-shifting provisions of 285, we do not find it was appropriate to analogize to the PRE standard, the stand litigation standard. And I know there has been some discussion about how that might affect our ruling. And I think Octane Fitness itself answers the question. And so this is Octane Fitness. It says, we crafted the Knorr-Pennington Doctrine to avoid shielding the exercise of the First Amendment right to petition the government for redress of grievances, but to the extent that patent suits are similarly protected as acts of petitioning, it is not clear why the shifting of fees in an exceptional case would diminish that right. So in that case where they're rejecting the 285, the more stringent standard, they're talking about in that context the protections of the First Amendment immunity are not the same. And here, of course, when we go back to Seagate and we go back to Bard, we can see that the protections are exactly the same. You have the threat of enhanced damages, which we're facing here in this case. What's the difference between the threat of enhanced damages and the threat of attorney fees? That's the distinction that Octane Fitness made. I don't see any distinction there talking about the threat of enhanced damages. The threat of antitrust liability and the attendant treble damages. That's the language. And that goes back to what Seagate was talking about. Seagate actually grafted this wolf on the standard, which was recklessness, because of its looking at the Supreme Court case law in cases like Safeco. Sure, that makes sense. But I still don't understand why this complicated two-part test from PRE is necessary to carry out that recklessness standard. It isn't necessary. It's just a close analog to the recklessness standard that was articulated in Seagate and also in our case. What do you think Highmark suggests about our standard review of those determinations? I think that Highmark is falling from Octane Fitness, I think, quite as it is, in saying because it's a lower standard and because we've always viewed the Supreme Court as a discretionary thing, it should be discretionary. Do you think we should review willfulness findings for abuse of discretion? I don't think so, because there's just two lines of cases where the Supreme Court treats fee shifting much differently than it treats statutory punitive damages statutes. When you're in the enhanced damages, statutory punitive damages context, that's where you see the recklessness standard and the clear and convincing standard. And then you go to PRE and you go to the cases it talks about for a probable cause, and you see because the objective willfulness standard is something that ultimately protects against punishment by the government to some extent and also the chilling of First Amendment rights. In that circumstance, it is appropriate, as the court decided in Bard, it is appropriate to put the decision-making around the objective reasonableness into the judge's hand, and there needs to be that de novo scrutiny because the appellate judge is going to be in a much better position to avoid the kind of hindsight bias that comes up whenever a trial judge is closely involved in a case. And in fact, there's a footnote from PRE that says, reminds folks that judges who are looking after the fact at the objective reasonableness of a defense or in that case in a claim. When the defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation. And so if we apply that test here or something like that test, then we go back to the very beginning of this litigation looking at what happened in Cooper I and Cooper II, and we see there are certain undisputed facts. Cooper conceived of the invention. Cooper provided the graph materials to Goldfarb. Cooper requested that Goldfarb test the material. And then you'll note in our brief we have the trial testimony of Goldfarb in which he says that he would not have been able to make the invention described in his patent application without the participation and cooperation of Gore employees. So those are classic pieces of evidence of co-inventorship, and they're supported by Cooper I and Cooper II findings. These are all drawn from those. So is it, if I can briefly, you're saying because there were arguments that could have supported a decision of co-inventorship, is the standard in your view still reckless disregard or something else? Yeah, it's recklessness. It would be reckless disregard objectively unreasonable. That standard is exactly the same. It's completely appropriate under the, even under the octane fitness analysis that I just told you, which they're distinguishing from fee-shifting and enhanced damages statutes. So, yes, that remains the standard. And it's also, I would say, it's critical that the judge, the appellate court is performing a de novo review on it. And I think if it performs de novo review, looks at those cold facts neutrally, those are the kind of facts that I think any reasonable litigant would think creates a good co-inventorship defense. And I think it would be pursued vigorously by almost any litigant. And so at the end of the day, that's what we should be looking at. And, of course, we not only have those facts at the beginning of the case and during the case, we have Your Honor's dissent in that case, in which you went through these same facts. That's behind us. The dissent is not the law. Understood. But I think it's important to look at that because those are the facts. It isn't just that there was a favorable decision and a dissent on the merits of our defense. I think it's a lot more than that. It's the facts that form the basis of that and the fact that that was exactly what we were looking at at the very beginning of the litigation. This is a very unusual case in which we had the benefit of federal circuit guidance on key inventorship facts, and we were anear this on sole invention, and there was a finding that we'd conceived, or Cooper had conceived. And then there was this anearment finding on at least part of the relationship between Cooper and Goldfarb. And those are classic indicia of co-inventorship. And if this standard is to have any meaning, this is a set of facts in which there should not be a finding of objective and reasonableness. Okay. We're way over our time. We're two minutes of rebuttal, and we'll add four minutes to the other side to keep things even. Thank you, Your Honor. May it please the Court. I'm not sure whether to spend the Court's time on the re-litigation of the standing question. The Supreme Court has made clear that there is no jurisdictional issue exception to the doctrines of law of the case and the mandate rule. Those doctrines are created for the very purpose of protecting finality, of preserving judicial economy, preventing injustice. What about if in the first case the district... How would it affect it if in the first appeal the district court had not considered? What is the significance of that? We think that that's an indispensable part. The question of standing, of jurisdiction, was fully litigated and decided. And when my friend's predecessor, counsel, made the judgment that this was not an issue worth taking to the appellate court, that made it final. And I'd like to add, not only did they not... But the matter of their having appealed it would not have precluded us. I mean, we could have... Oh, that's absolutely so. And, of course, the standing ruling was before this court. The court said not just that it had jurisdiction, but that the district court had jurisdiction. My friend would have this court decide that the original panel not only failed to do its duty of determining jurisdiction, but also did not mean what it said when it said that the district court had jurisdiction. But isn't that what the Supreme Court kept telling us, at least in the extracts that were read to us this morning? You have to assure yourself that there was jurisdiction throughout the procedure. I assume that the appellate court did so. There's a presumption, I think. There has to be at least a presumption that the court did what it's supposed to do and that it meant what it said. For Gore to come in and say that it did not, I think, is pretty extraordinary. And one other important... But we would have said the same thing whether or not... I mean, that's what we said. So even if the district court had not considered it, we would have said the same thing, but I thought you just acknowledged that it was relevant, germane, and significant that the district court did consider that issue. I think it was, because the question is, has this been determined? The appellate court was entitled to assure itself of jurisdiction by reading the district court's opinion, realizing that it wasn't challenged, and affirming it. Are you saying that if we, looking at this now, conclude that there just isn't any Article III jurisdiction, that we're bound by the mandate rule and we still have to issue an opinion even though we think there's no case for controversy? Your Honor, I don't think of the mandate rule and law of the case as limiting the power of the court. It is something that is at the disposal of the court to protect against precisely the kind of repetitive litigation that we see here. Can I finish my question? If we think that there's no Article III jurisdiction here, we can dismiss the case for lack of jurisdiction? You certainly have the power to do that. Given that the Supreme Court has said that the law of the case and the mandate rule do apply to jurisdictional questions, I don't think that you have to, and I don't see why you would want to, given the underlying equities of the circumstance. But let me just comment on the merits of the standing. Let me just make sure I'm clear on that. So your view is that we are not bound if the other... For example, what if in the prior appeal we had discussed the standing issue explicitly and ruled on it explicitly? Would we now be able to come in as a second panel and say we're not bound because we're looking at it anew? Would we have to go amonk on that issue? Or I understood your answer to Judge Hughes to be that we could overrule or come out a different way than the first panel. Is that your position? It would be extraordinary for the court to do that. But what the Ninth Circuit has said, and I assume that Ninth Circuit law applies here, is that these rules are not inexorable commands. They're subject to certain exceptions when the facts have changed, when the underlying law has changed, or where there are powerful indications of a manifest injustice. These are not inexorable rules. None of those things apply. If anything, I would say that the manifest injustice is for a party to make an argument to abandon that argument, to go through two sets of appeals, an en banc proceeding, and a remand. Is it your view that those criteria that you articulated in the Ninth Circuit case apply equally to whether or not the court, our first panel, explicitly articulated an analysis of standing, or only if it did? I think that if it did, again, if there were changes in the facts or in the law, then there might be one of the exceptions that apply. There are no changes in the facts, there are no changes in the law, and there certainly is no manifest injustice. And to add to that, the standing argument on the merits was properly abandoned by distinguished counsel the first time around. My friend simply ignores the glaring fact about standing, which is that BVP, under any standard, was at least an exclusive licensee, which gives BVP constitutional standing. But how do you harmonize that, again, with the statements of the Supreme Court that standing, there must be standing, it can be reviewed and corrected at any time? Well, now I'm arguing why there was standing,  that there was standing. There was standing because it wasn't reviewed. There was also standing because there was standing. That is to say, BVP was at least the exclusive licensee, and the other two parties, in fact, all three parties involved were parties to the case. Dr. Goldfarb, the inventor, is a plaintiff, BVP, the exclusive licensee, is a plaintiff, and C.R. Bard, the third party to this, was a counterclaim defendant, which, under this court's decision and evident corporation, is sufficient to satisfy the standing determination. Given that, the standing argument is borderline frivolous. I might add that not in the first appeal in this case, Gore did not just drop the jurisdictional standing argument, but they affirmatively represented to this court that BVP was the assignee of the patent. If BVP was the assignee of the patent, then their theory that C.R. Bard is the sole owner of the patent is obviously false. So for them to prevail today would indicate that their statements in their brief in the first case around were inaccurate. Shall I turn to the willfulness question? Sure. So the standard of review here is obviously a matter of considerable importance. We reserved this issue in footnote four of our brief, and after the briefing was complete, as this court is, I suspect, excruciatingly aware, the Supreme Court decided the Highmark decision. Highmark holds that the proper appellate standard of review under section 285 is abuse of discretion. This court has long held, and I think the clearest case for that is the Eilor versus Google. That was an attorney's fees case or a multiplication of damages case? I'm sorry, Highmark? Yes. Highmark was an attorney's fees case under 285. But this court has long treated 284 and 285 as an Eilor versus Google. The court said that these are identical standards. So I think... Could you respond to your friend's quotation of Octane where it specifically notes that there's, or it seems to note there's some difference between fees and trouble damages? The thrust of Highmark... Well, I just asked you about Octane. I didn't ask you about Highmark. I know. We're relying upon Highmark. I understand, but here's my problem with that. Octane addresses the underlying standards for fees, and I asked your friend, and I'd like you to address whether that changes the underlying standard for willfulness. Because it seems to me that if it does, then Highmark probably applies too. But if it doesn't, it's a much harder question because if the standard is still an objective, subjective test, then it seems to make sense that if something is determined objectively, we should review that de novo. I think that the underlying... I think that these cases are about two different things. Octane is primarily about what the substantive standard is. Is this exceptional case limited to essentially a willful violation? The court said no, the statute doesn't say that. Then Highmark is about the appellate review, and I think for Highmark's purposes that there's no relevant difference between the two statutes. Do you think... Okay, I understand on the standard of review. What do you think, if any effect, Octane had on the standard for willfulness? I don't think that it has any direct impact. So you agree with your friend that we should keep applying the two-part test from Bard and Seagate, I guess? We do not disagree as to the actual understanding of what willfulness is. That is, it has both an objective and a subjective component. And within an abuse-of-discretion standard, if there are actual errors of law committed by the district court, they are, of course, correctable under an abuse-of-discretion standard. Why don't you for a moment argue your case assuming that we're going to apply our existing de novo standard of review? Yes. So the key fact having to do with joint inventorship willfulness, and I think my friend mostly wants to talk about other questions. I think there were some questions in this case that were quite close. I think, in particular, the interference was close as to which of these inventors took the invention practice, committed it to practice. Of course, that was a close question. Joint inventorship is not a close question because, as this court said in Bard 1, there is no evidence that at the time when Cooper gave those two boxes of undifferentiated EPTFE tubes to Dr. Goldfarb, that he had any conception of internodal distance. At that point, he was focusing upon other things entirely. At some point after the tubes were provided to Dr. Goldfarb, Cooper had his conception. But Cooper, in the case, admitted that he did not communicate that. I'd better interrupt you before you go too deeply into a direction that's insupportable. The patent office found that Cooper was the first inventor, and that was affirmed in the interference. So I think that the first to conceive, that Goldfarb was the first to reduce to practice, and Cooper was the first to conceive. As you tell us, that there was a box of undifferentiated samples. It was accompanied, as I recall, by the reports of the physicians who had tested some of those samples with mixed results. Some worked, some didn't. So I think let's just not rewrite history as well. We have the result, which is behind us. When through this court was decided the patent was awarded to Goldfarb. But I don't think that we need to, and I think that your friend as well, in trying to point out that it was a close case with equities to be considered, as you point out. But I think let's now talk about the issue before us, the remand from this court to the district court, which was decided and which is now appealed to us. Yes, and so the question put to the district court and by the court in part two was to go back through the entire record and determine whether Gore's conduct in infringing was objectively reasonable. Judge Murguia did that. It's a heavily factual matter, as you pointed out in your dissent, Judge Newman. It involved a lot of credibility determinations. This district judge heard the testimony. She, for example, heard the video, which is in the record, and I recommend to your honors that you listen to it if you haven't already, of Cooper being asked, what was your contribution to the invention? And his being essentially unable to answer the question, looking about, looking down, and eventually saying, well, due to my work, he received the material. We had a decision of the board, the patent office, and the interference affirmed by this court that Cooper was the first to conceive. So the first to conceive the invention. He didn't get the patent because he wasn't the first to reduce the practice. So I think let's stick to the issue, which is before us. And Cooper's conception was after he sent the tubes to Dr. Goldfarb, and he never communicated his conception to Dr. Goldfarb. So from the point of view of joint inventorship, the question is, did Cooper make a significant contribution to Goldfarb's invention? And the answer to that is no, because he provided industrial material not knowing which tubes might work and which tubes might not or why. It was Goldfarb who discovered that on his own. Now, Cooper discovered it as well, but Cooper never communicated that to Goldfarb. And so Cooper did not make a contribution to Goldfarb's invention. And Cooper I and Cooper II are about the interference. And I agree with Your Honor that it was perhaps a close case as to who reduced to practice first, which was the key issue in those. But it is not a close case as to whether Cooper made a contribution to Goldfarb's invention. The credibility determinations here are especially key. The district judge heard Cooper's own inability to explain his contribution. She heard him discuss why he stole Goldfarb's slides in order to be able to understand the matter. She heard testimony from other Gore employees regarding the lack of... You're over your time. Pardon me, Chief Justice Gross. I think we've heard, have your argument. Let's turn back to the other side. Thank you. Your Honor, do you mind? Could I just address this issue about law of the case and the dilemma that you have of having a ruling that came in on a first appeal that looks to... Well, you can address what you want. You're free to use your time. Thank you, Your Honor. The Supreme Court has looked at this exact issue several times. And it has been faced with the fact that it has exercised jurisdiction on certain issues, has not addressed standing. And it said as recently as 2011 in Arizona Christian when a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed. And there is nothing in that opinion, in the court's opinion, it's saying there's jurisdiction under... And I don't want to be overly technical, but it's saying there's jurisdiction under 1338, an appellate jurisdiction, and both those things are true, of course. This arose under the patent statute in the district court, and it's an appeal from that kind of case. There is no specific discussion of standing and the issues that were raised below. And in fact, when the order, the opinion, talks about the different motions that were before it, it does not list among the motions the standing motion, the standing challenge. So I think we are in a position, and I know of no case, in which a court has not been squarely presented with an issue on appeal, number one, and then number two, does not explicitly make a note, at least, that is deciding this issue. Under those two, application of law in the case and the circumstance, I think, would be unprecedented, and it would be at the... And the reason we have that concern, and the Supreme Court talks about it, is because jurisdiction is too important to assume from prior situations in which the issue has not been raised, that it has been decided. That's part of the need to independently evaluate. Thank you. We thank both parties for the case you submitted.